In the

# United States Court of Appeals

## For the Seventh Circuit

───────────────

No. 22-1489

ELIZABETH HUSTON, individually and on behalf of all others
similarly situated,

*Plaintiff-Appellant,*

*v.*

HEARST COMMUNICATIONS, INC.,

*Defendant-Appellee.*

───────────────

Appeal from the United States District Court for the
Central District of Illinois.
No. 21-cv-01196 — **Michael M. Mihm**, *Judge.*

───────────────

ARGUED OCTOBER 25, 2022 — DECIDED NOVEMBER 22, 2022

───────────────

Before SYKES, *Chief Judge*, and FLAUM and LEE, *Circuit
Judges*.

FLAUM, *Circuit Judge*. Elizabeth Huston, a *Good Housekeep-
ing* magazine subscriber, filed a putative class action com-
plaint alleging a media conglomerate, Hearst Communica-
tions, Inc., violated her right of publicity by offering to sell
and selling mailing lists containing her, and 9.1 million other
subscribers', identifying information. As redress, Huston

seeks statutory damages as provided by the Illinois Right of Publicity Act (IRPA) and an injunction requiring Hearst to obtain prior written consent before selling its subscribers' information in this manner.

The district court granted Hearst's motion to dismiss because it found Huston failed to sufficiently allege an IRPA violation. Judgment was entered, and this appeal ensued. For the following reasons, we affirm the judgment of the district court.

## I.    Background

Huston alleges Hearst violated IRPA by offering for sale and selling mailing lists that identified its magazine subscribers, including Huston, by name, address, "gender, age, ethnicity, income, political party, religion, and charitable donation history," among other personal attributes. Two mailing lists are at issue: (1) the *Good Housekeeping* Mailing List and (2) the Hearst Corporate Masterfile & Enhanced Mailing List. The first contains personal information for "each of the 1,715,229 active U.S. subscribers to *Good Housekeeping*." The other contains the same information for "all 9,108,589 active U.S. subscribers to all of Hearst's various publications." While Hearst directed its offer to sell these mailing lists to the "community at large," the intended audience was data miners, aggregators, and brokers who use this information to target subscribers with direct-mail advertisements.

IRPA provides: "A person may not use an individual's identity for commercial purposes during the individual's lifetime without having obtained previous written consent." 765 Ill. Comp. Stat. 1075/30(a). According to Huston, offering to sell and selling these mailing lists violates IRPA because it

constitutes using or holding out her identity for a commercial purpose. Hearst filed a motion to dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint failed to sufficiently allege a commercial purpose and thus failed to state an IRPA claim. The district court agreed and granted Hearst's motion. Huston declined to amend her complaint, the district court entered judgment in favor of Hearst, and Huston subsequently appealed.

## II. Discussion

On appeal "[w]e review *de novo* the district court's grant of [a] Rule 12(b)(6) motion to dismiss, accepting all well-pleaded factual allegations as true and drawing all reasonable inferences in [the plaintiff's] favor." *Leszanczuk v. Carrington Mortg. Servs., LLC*, 21 F.4th 933, 937 (7th Cir. 2021).

### A. IRPA Claim

IRPA codified and eliminated the common law tort of "appropriation of another's name or likeness," *Dwyer v. American Express Co.*, 652 N.E.2d 1351, 1353 (Ill. App. Ct. 1995), and secured the right for a "person to control the commercial value of his or her identity," *Toney v. L'Oreal USA, Inc.*, 406 F.3d 905, 910 (7th Cir. 2005). To state a claim for a violation of IRPA, the plaintiff must allege: (1) an appropriation of the plaintiff's identity, (2) without the plaintiff's written consent, and (3) for defendant's commercial purpose. § 30(a); *see also Blair v. Nev. Landing P'ship*, 859 N.E.2d 1188, 1192 (Ill. App. Ct. 2006) (discussing elements of IRPA claim where defendants used plaintiff's photograph to advertise their restaurant and casino).

Hearst does not dispute that the mailing lists identify Huston and that Huston did not consent to being included on the

mailing lists. As a result, this appeal centers on the last element—whether Hearst used Huston's identity for a commercial purpose.

### 1. *Commercial Purpose*

IRPA defines "commercial purpose" disjunctively as "the public use or holding out of an individual's identity (i) on or in connection with the offering for sale or sale of a product, merchandise, goods, or services; (ii) for purposes of advertising or promoting products, merchandise, goods, or services; or (iii) for the purpose of fundraising." § 5. Huston's principal argument arises under the first prong of the Act's definition: that Hearst publicly used or held out Huston's identity "on or in connection with the offering for sale or sale of" the mailing lists. *Id.*

The district court did not explicitly consider whether Huston's identity was used or held out by Hearst to sell the mailing lists. Instead, it concluded that IRPA liability is limited to instances where a person's identity is used or held out to sell a separate product, and the mailing lists are not separate from Huston's identity.[1] However, "[w]e may affirm on any ground that the record supports and that the appellee has not

---

[1] On appeal, Huston argues that IRPA's first commercial use prong ("on or in connection with the offering for sale or sale of a product") does not require that the person's identity be used to sell a separate product; only prong two ("for the purposes of advertising or promoting products") has that requirement. The difference between a prong one and prong two violation is obscure, and there is no guidance from the Illinois Supreme Court. Ultimately, the distinction is not determinative to our resolution of this appeal. Even if the mailing lists are separate products, we affirm because Huston's identity was not used or held out in connection with their sale, advertisement, or promotion.

waived." *Albert v. Oshkosh Corp.*, 47 F.4th 570, 577 (7th Cir. 2022) (citation and internal quotation marks omitted), *reh'g denied*, No. 21-2789, 2022 WL 4372363 (7th Cir. Sept. 21, 2022). The parties briefed the "public use or holding out" issue before the district court and on appeal, so we will consider it.

On this issue, the parties analogized to two recent IRPA cases in the background report context. In both cases, *Dobrowolski v. Intelius*, No. 17-CV-1406, 2018 WL 11185289, at *3 (N.D. Ill. May 21, 2018), and *Lukis v. Whitepages Inc.*, 542 F. Supp. 3d 831, 837–38 (N.D. Ill. 2020), the courts considered whether free previews and internet ads for paywalled background reports constitute commercial use. The previews and ads held out a limited amount of information about the plaintiffs, but a user could receive more information by purchasing a background report. *Dobrowolski*, 2018 WL 11185289, at *1; *Lukis*, 542 F. Supp. 3d at 835. The courts reached conflicting outcomes, hinging on whether the paywalled reports were sufficiently separate from the plaintiff's identity or whether the two were effectively merged. *Dobrowolski*, 2018 WL 11185289, at *3; *Lukis*, 542 F. Supp. 3d at 838. However, in both cases it was clear that the free preview was intended to encourage purchase of the background report. *Dobrowolski*, 2018 WL 11185289, at *1; *Lukis*, 542 F. Supp. 3d at 838.

What distinguishes this case from the background report cases—and is outcome determinative—is that Huston did not allege that Hearst solicited mailing list purchasers by publicizing her information. She did not allege prospective mailing list purchasers were able to see her or any other subscribers' information, in whole or part, prior to their purchase. She also did not allege her name was used to sell or promote the mailing lists themselves. Instead, Huston alleged that her identity

was included as part of the product sold. This is different from *Dobrowolski* and *Lukis*, where a free preview held out limited information about the plaintiffs to entice a commercial transaction. *Dobrowolski*, 2018 WL 11185289, at *1; *Lukis*, 542 F. Supp. 3d at 838; *cf. U.S. News & World Rep., Inc. v. Avrahami*, No. 95-1318, 1996 WL 1065557, at *4, 7 (Va. Cir. Ct. June 13, 1996) (concluding that "[t]he inclusion of an individual name as part of a mailing list constitutes neither a use for an advertising purpose nor a use for the purpose of trade" under a similar Virginia publicity statute because "U.S. News did not identify any individual name that would be contained on the [list]" or "promote or advertise its list" in that manner).

Huston tries to minimize this distinction by arguing that "commercial purpose" includes both "public use" and "holding out," and that the word "public" does not modify "holding out." Consequently, she contends that Hearst did not need to publicly hold out her identity; it violated IRPA by including her name and information on a mailing list that anyone could purchase.

This is a nonstarter. Regardless of whether "public" modifies "holding out," Huston's argument ignores the timing requirement implicit in IRPA's construction. On its face, the statute prohibits the use or holding out of a person's identifying information *to offer to sell or sell* a product, piece of merchandise, good, or service. § 5. Thus, the statute contemplates a use or holding out of an individual's identity with the aim of effectuating a sale. Necessarily, then, any use or holding out must either accompany an offer to sell or precede the sale, *see Toney*, 406 F.3d at 907 (where model's image was used on the "packaging of a hair-relaxer product"), but it cannot follow the sale. A person's identity cannot be employed to sell a

product if their identity is only revealed after the sale is completed.

Legislative history supports this reading. On the Illinois House of Representatives floor, the Act's sponsoring representative explained IRPA would require consent before using someone's likeness "[i]n order to sell something." 90th Ill. Gen. Assem., House Proceedings, April 24, 1997, at 226 (statements of Rep. Turner). He went on to offer an example of a commercial depicting "Fred Astaire dancing with a vacuum cleaner," explaining that the vacuum company using such an advertisement without Astaire's consent would be liable. *Id.*

Under the facts Huston alleged, her information is disclosed only after the sale of the mailing list is consummated and the purchaser begins perusing the 9.1 million names. Huston's identity would not elicit the sale of the mailing list in the way Fred Astaire dancing with a vacuum cleaner would elicit viewers to buy the vacuum cleaner, or the way a model's image would elicit someone to purchase a box of hair relaxer. Huston's name and other information may have been sold, but it was not used to sell anything. That brings Huston's claim outside IRPA's ambit.

An Illinois appellate court recognized the significance of the "use or holding out" requirement in *Trannel v. Prairie Ridge Media, Inc.*, 2013 IL App (2d) 120725. In that case, a magazine published a photograph of the plaintiff and her daughter, taken originally to publicize the winner of its garden competition, on the cover of a media kit it sent to solicit advertisers. *Id.* ¶¶ 1, 4. The court interpreted IRPA to "prohibit[] the holding out—meaning the representation—of an individual's identity on or in connection with certain activities." *Id.* ¶ 21. Accordingly, the court concluded that the magazine violated

IRPA by "placing plaintiff's and her daughter's identities on the cover" of a media kit which offered for sale advertising services. *Id.* ¶¶ 21–22. The photo "was 'on' or 'in connection' with the media kit," which in turn was "an offer for the sale of … [advertising] 'design and production' services." *Id.* ¶ 22. There is no corollary to the media kit in Huston's case. Her identity was not placed on the cover of the mailing list or held out to aid, effectuate, or propose a commercial transaction.

Perhaps recognizing the pitfalls of her first statutory interpretation argument, Huston offers another: that Hearst violated IRPA by using her identity on a product. However, IRPA does not prohibit the use of someone's identity on a product. It prohibits, under the first commercial use prong, the use of someone's identity "on … the offering for sale or sale of a product." § 5. Huston's reading leaves off an important verb—sale.

It is not enough for Huston's name and other information to appear on or within a product. Her identity must help sell something—whether it is that product or a separate product or service. If Huston were correct, the *Trannel* court could have concluded its analysis after finding that the plaintiff's and her daughter's identities appeared on the media kit. 2013 IL App (2d) 120725, ¶ 21. Instead, it was integral that the media kit was used to try to sell something else (there, advertising space in the magazine). *Id.* ¶ 22.

Huston's cited cases on this issue are unavailing. First, *Ainsworth v. Century Supply Co.*, a pre-IRPA case, is factually dissimilar. 693 N.E.2d 510, 512 (Ill. App. Ct. 1998). There, the plaintiff consented to be in a video to instruct Century Supply's customers on how to install tile. *Id.* Subsequently, Century Supply hired a third party, TCI, to create a television

commercial, and TCI used a clip from the plaintiff's instructional video in the commercial. *Id. Ainsworth* did not consider the central issue in this case: whether the plaintiff's identity was used for a commercial purpose under IRPA. Instead, the court evaluated the common law element of "commercial benefit" and focused on whether TCI benefitted from using the plaintiff's image in the commercial it created for Century Supply. *Id.* at 513. The court concluded that it had, but there was no dispute that the commercial was designed to advertise Century Supply's services. *Id.* at 513–15. Put in IRPA terms: There was no dispute that Century Supply's services were what the plaintiff's identity was held out to sell.

Second, in *Brown v. ACMI Pop Division*, at issue was the defendant's display of "a catalogue of over 2.1 million photographic images it owns so that customers can identify the images they choose to license." 873 N.E.2d 954, 956 (Ill. App. Ct. 2007). Ultimately the court affirmed denial of the defendant's motion to dismiss "[i]n light of the vast difference of opinion regarding the interpretation of the definition of what [the defendant] s[old] and the legal effect of such sales." *Id.* at 962.

The dispute centered on whether the defendant's display of the preview images (low-resolution or watermarked versions of the photographs) fell under an exception to IRPA (because some of the defendant's customers were news media) and whether federal copyright law applied where the defendant only licensed—and did not sell—the photographs of the plaintiff. *Id.* at 959–64. But again, like *Ainsworth*, it was clear that the plaintiff's identity—represented in the preview photos—was held out to advertise the sale of a license to use the high-resolution version of the same image. Huston alleged no facts suggesting her identity was held out in furtherance of

the sale of the mailing lists in a similar way to how the low-resolution images were held out to sell copyright licenses. As such, *Brown* is uninstructive.

Last, Huston cites *Doe v. Flava Works, Inc.*, 2014 IL App (1st) 121491-U, a nonprecedential order under Illinois Supreme Court Rule 23(e)(1). Even putting aside the lack of precedential value, *Flava Works* is not persuasive because it does not discuss how IRPA was violated. The decision was limited to the plaintiff's monetary recovery under the Act. *Id.* ¶ 1. A videographer brought an IRPA claim against an adult video producer because his likeness and voice were included in films without his consent. *Id.* ¶ 4. The appellate court did not consider or discuss the trial court's conclusion that the plaintiff's identity was used "for a commercial purpose because plaintiff's image could be identified during two parts of the [films] and the [films] were sold to the public." *Id.* ¶ 6.

If this limited reasoning was the extent of the trial court's analysis, *Flava Works* would be in conflict with other Illinois decisions such as *Trannel*, as well as the plain reading of IRPA. However, it is possible the trial court's reasoning is not fully reflected in the appellate court opinion. The tension would be resolved if, for example, the plaintiff's image was used in promotional materials such as DVD cover art or free previews of the films. That would bring the fact pattern closer to *Toney* or *Lukis*. Regardless, in light of other, more persuasive authority, *Flava Works* does not alter our conclusion.

### 2. *Alternative IRPA Arguments*

Huston offers two alternative bases for reversing the district court's decision. First, she attempts to cobble together a connection between her identifying information and her

purchase of the *Good Housekeeping* subscription. Second, she argues Hearst's conduct also runs afoul of IRPA's second commercial use prong, which concerns advertisement or promotion. Neither argument is persuasive.

### a.  Huston's Subscription to *Good Housekeeping*

Huston contends that Hearst impermissibly used her identity in connection with its sale of the *Good Housekeeping* subscription to her. The sale of a magazine subscription fits neatly into IRPA's definition of commercial use, much like the sale of advertising space in *Trannel*. The magazine is plainly a product. However, this argument can go no further.

IRPA requires that the individual's identity be used or held out to advance a commercial goal (selling, advertising, fundraising, etc.) and, necessarily, precede or accompany the activity. The stumbling block for Huston's argument is that her identity was not used to sell her a *Good Housekeeping* subscription or held out in connection with that sale. Huston giving her name and other identifying information to Hearst for purposes of subscribing to the magazine does not count. § 5. IRPA is clear that Hearst must be the party "us[ing] or holding out … an individual's identity." *Id.* Therefore, any "holding out" of Huston's identity by Hearst could not have been in furtherance of the sale of *Good Housekeeping* to Huston.

### b.  Endorsement Theory

Huston's final alternative argument is that including her information on the mailing list violated IRPA's "endorsement prong" because it constitutes using Huston's identity to endorse or promote *Good Housekeeping* without her consent. While "endorse" does not appear anywhere in the statute, Huston seems to argue that Hearst's mailing lists violate the

second commercial use prong: public use or holding out of an individual's identity "for purposes of advertising or promoting products, merchandise, goods, or services." § 5.

The problem is, Huston's complaint does not allege facts to support a reasonable inference that Hearst used the mailing list to promote *Good Housekeeping*. Instead, the complaint devotes pages to discussing the practice of data mining, the threat the industry poses to consumers, and the profit it generates for companies willing to sell their customers' information. She alleges that "when companies like Hearst sell the identities of its customers to data aggregators, … [they] put[] almost anyone within the reach of fraudulent telemarketers and other criminals." This practice "puts consumers … at risk of serious harm from scammers," "while Hearst profits handsomely." Therefore, Huston's complaint does not plausibly suggest that Hearst's commercial goal in holding out its customer mailing lists is to promote its own magazines.

In sum, Huston failed to allege that Hearst used or held out her identity to effectuate the sale of the mailing lists. Because Huston did not allege that Hearst made any portion of her information available to prospective mailing list purchasers or used her identifying information to solicit purchasers or consummate the sale, Hearst did not use or hold out Huston's information as is required for IRPA liability. Huston also failed to allege facts to support either of her alternative theories: that Hearst held out her information in connection with her purchase of a *Good Housekeeping* subscription or that Hearst used her identifying information to promote its own magazines. As a result, Huston's complaint fails to state a claim under IRPA.

### III.    Conclusion

For the reasons explained, the judgment of the district court is AFFIRMED.